IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**FOREVER Al-MANI HAMILTON a/k/a
JAMAL KEMO SAUNDERS,**
    Plaintiff,

v.                                                                                                                                                     Civil Action No. 3:20cv504

**ASSISTANT WARDEN COLLINS, et al.,**
    Defendants.

## MEMORANDUM OPINION

Forever Al-Mani Hamilton, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The matter is before the Court pursuant to the Court's screening obligations under 28 U.S.C. § 1915(e)(2) and on a Motion to Dismiss filed by Defendants Clarke and Collins. (ECF No. 19.) Hamilton responded to the Motion. (ECF No. 23.) For the reasons discussed below, the Motion to Dismiss will be GRANTED.

### I.     STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines that the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B); *see also id.* § 1915A(b)(1). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a court accepts the plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff cannot satisfy this standard with a complaint containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). To survive dismissal for failure to state a claim, a plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*,

574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.  HAMILTON'S ALLEGATIONS AND CLAIMS

In his Complaint, Hamilton argues that Defendant Collins, the Assistant Warden of the Security Care Unit ("SCU") at Virginia Commonwealth University ("VCU") hospital, Defendant Anderson, a Correctional Officer at the SCU at VCU,[1] and Defendant Clarke,[2] the Director of the Virginia Department of Corrections ("VDOC"), violated Hamilton's rights under the Prison Rape Elimination Act, 42 U.S.C. §§ 15601–15609 (2021) ("PREA"), and under the Eighth Amendment by failing to comply with the PREA. Hamilton states as follows, in relevant part:[3]

1. On or about the first weekend of February 2020, Forever A-Mani Hamilton I, hereinafter referred to as "the Plaintiff" was admitted to the . . . SCU at . . . VCU . . . for oral [ingestion] of razors.

. . . .

4. The Plaintiff was assigned hospital room number 154 of the SCU and provided a number of individual "sitters" which are Certified Nursing Assistant (CNA) employed by Supplemental Staff Services and who is contracted with VCU . . . .
5. On or about the third Sunday in February 2020 at 7:00 P.M., the Plaintiff was assigned CNA/sitter Ka'Myla Guest[] for the hours of 7:00 P.M.–7:00 A.M. on this day.
6. Defendant Anderson was the prison guard on duty[] this night.
7. Between the hours of 1:00 A.M. through 4:00 A.M. [the] Plaintiff's sitter seduced him and manipulated him into allowing her to commit oral sex on him and kiss him.

---

[1] To date, Hamilton has not served Defendant Anderson. The Court, therefore, only sets forth the allegations and claims against Defendant Collins and Defendant Clarke.

[2] The Court corrects the spelling of Clarke's name.

[3] The Court employs the pagination assigned by the CM/ECF docketing system to the record. The Court corrects the capitalization, spelling, and punctuation in the quotations from the Complaint.

3

8. During these hours and sexual episodes, Defendant Anderson was asleep at his desk in the SCU hallway on-and-off.
9. Defendant Anderson's security desk was visible and approximately ten feet from Plaintiff's hospital room and could be seen through and from Plaintiff's room window and hospital bed.
10. The sitter manipulated Defendant Anderson's security and duty negligence of him sleeping and not making all of his 30-minute rounds on time to seduce the Plaintiff into oral sex and constant kissing.
11. The Plaintiff did not consent to the oral sex or kissing by his sitter.
12. The Plaintiff is an inmate of the DOC and cannot consent to sex or sexual behaviors by either inmates, staff, or volunteer staff.

. . . .

14. During Defendant Anderson's lunch break, guard made exact[ly a] 30-minute security check. During this time the sitter did not kiss or touch the Plaintiff.
15. Upon Defendant Anderson's return from lunch break and his lack of rounds due to his sleeping, the sitter resumed her sexual violations on the Plaintiff.
16. Due to the SCU legally being an operated DOC unit . . . the unit is required to be in compliance with the PREA standards. . . .
17. However, the SCU is not in compliance with PREA standards and state law.

. . . .

19. Neither Defendants Clark (as the DOC Director), nor Collins (as SCU Assistant Warden) has provided a contract renewal with VCU . . . to be in compliance with PREA standards on the SCU.
20. SCU at VCU . . . is legally a DOC "unit" which has an Assistant Warden (Defendant Collins) and a security chain of command because of such.
21. Neither Defendant has implemented any PREA standard instructions with VCU . . . so that nurses and other medical/hospital staff that is providing medical services with DOC inmates would know of DOC's zero tolerance policy according to PREA.
22. Nor was there any method an inmate assigned to VCU . . . SCU to report sexual abuse or harassment.
23. Had SCU been in PREA compliance and had not been deliberate[ly] indifferent to these PREA standards the Plaintiff may not have been subjected to sexual assault and harassment.
24. And [had] Defendant Anderson not been negligen[t in] his security duties, the sexual assault would not have [taken] place at all because the Plaintiff would have been protected. . . .

(ECF No. 1, at 2–5.) Hamilton has not identified specific legal claims despite his labeling of a section, "LEGAL CLAIMS." (*Id.* at 9.) Rather, Hamilton has ten numbered paragraphs from which the Court attempts to extrapolate his claims. The Court generously construes Hamilton to raise the following remaining claims for relief against Defendants Clarke and Collins:

4

Claim One: "Defendants Clarke and Collins [were] deliberate[ly] indifferent and negligent to the Plaintiff's rights secured by the 14th Amendment to the U[nited ]S[tates ]C[onstitution] for equal protection and to be free from sexual assault and harassment by inmates, staff, contractors . . . ." (*Id.* at 9.)

Claim Two: "Defendants Collins' and Clarke's negligence and deliberate indifference to the Plaintiff's rights by not having SCU in PREA Compliance, the Plaintiff was sexually assaulted and sexually harassed by a VCU [Health Services] employee who had not know[n] DOC had a zero tolerance sexual relations and assault policy because no notices were posted in common areas of the SCU as also required as PREA Compliance." (*Id.* at 10.)

Claim Three: "Due to the Defendants['] negligence and deliberate indifference to PREA standards the Plaintiff was not able to report the sexual assault at VCU . . . SCU in any available remedy because Defendants Collins and Clarke has not established a PREA Administrative remedy for SCU." (*Id.*)

Hamilton requests declaratory and injunctive relief and a large sum of monetary damages. (*Id.* at 10–11.)

### III. ANALYSIS

#### *A. Claims Against Defendant Clarke*

As a preliminary matter, and in response to the Defendants' contention that they are entitled to qualified immunity, Hamilton states that, "[a]fter reviewing further caselaw and other applicable lawful matter, Mr. Hamilton agree[s] that Defendant Clarke is entitled to qualified immunity in this action and asks the Court to dismiss Defendant from this action and grant Defendants' Motion to Dismiss, IN PART." (ECF No. 24, at 4.) In accordance with Hamilton's request, any claim against Defendant Clarke will be DISMISSED.

#### *B. PREA Claims*

In Claims Two and Three, Hamilton faults Defendant Collins for not ensuring that the SCU at VCU was compliant with the PREA, and he contends that this lack of compliance led to his

5

alleged sexual assault. However, as discussed below, the PREA does not create a right of action that is enforceable by an individual civil litigant under § 1983.

"Section 1983 . . . is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). Accordingly, in any action under § 1983, the Court must begin its analysis by identifying the precise constitutional or statutory violation that the defendant allegedly committed. *See id.* ("The first step in any such claim is to pinpoint the specific right that has been infringed." (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).

"Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." *De'lonta v. Clarke*, No. 7:11–cv–0483, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013) (citation omitted). Rather, "[t]he PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . . The statute does not grant prisoners any specific rights." *Id.* (quoting *Chinnici v. Edwards*, No. 1:07–cv–229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008)). Accordingly, Hamilton fails to state a claim for relief based on an alleged violation of the PREA. *See id.* (citations omitted); *see also Hill v. Hickman Cnty. Jail*, No. 1:15–cv–0071, 2015 WL 5009301, at *3 (M.D. Tenn. Aug. 21, 2015) (collecting cases and holding that "[t]o the extent the complaint might be construed as bringing a claim under the PREA, such claim must be dismissed"); *Byrd v. S.C. Dep't of Corr.*, No. 5:11–3340–MGL, 2013 WL 5309759, at *11 (D.S.C. Sept. 19, 2013) ("Because § 1983 itself does [not] create any rights, and the text and the structure

6

of the PREA provide no indication that Congress intended to create new individual rights, there is no basis for a private right of action for inmates to sue prison officials for noncompliance with the Act." (footnote and citations omitted)). Because Hamilton's claims under the PREA fail to state a claim and are legally frivolous, Claims Two and Three will be DISMISSED WITH PREJUDICE.

### C. Eighth Amendment Claim

#### i. Legal Standards

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

In Claim One, Hamilton contends that Defendant Collins "was deliberate[ly] indifferent and negligent to the Plaintiff's rights secured by the 14th Amendment to the U[nited] S[tates] C[onstitution] for equal protection and to be free from sexual assault and harassment by inmates, staff, contractors . . . ." (ECF No. 1, at 9.) Defendants construe this claim as one brought

exclusively under the PREA.[4] In his presentation of his claims, Hamilton indicates that he "was entitled to Equal Protection of law under PREA and [Code of Virginia] statutes pursuant to his 14th Amen. Right." (ECF No. 1, at 9.) In his Response, Hamilton continues to impute liability on Defendant Collins because he "did not adopt to the mandated prison rape national standards in the VDOC SCU by ensuring his liability under color of state law were adhered to by being in compliance with PREA." (ECF No. 24, at 12.) Once again, to the extent that Hamilton faults Defendant Collins for not implementing PREA standards at the SCU, that claim is legally frivolous and will be dismissed. Nevertheless, the Court will generously construe Hamilton's complaint to allege that Defendant Collins failed to protect him from the alleged sexual assault.

Although Hamilton identifies this as an equal protection claim under the Fourteenth Amendment, because Hamilton is a convicted prisoner, the Eighth Amendment governs his claim of failure to protect. *See Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) ("[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners . . . .'" quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

It is well established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation. *See Woodford v. Ngo*, 548 U.S. 81, 118

---

[4] The Court agrees that it appears that Hamilton intended to bring Claim One solely under the PREA. In contrast, Hamilton's claim against Defendant Anderson is based on a deliberate indifference standard under the Eighth and Fourteenth Amendment and Hamilton did not mention the PREA in the context of that claim. (*See* ECF No. 24, at 3.)

Defendants also argue that Defendant Collins is entitled to qualified immunity on any constitutional claim. The Court need not address that argument because the Court determines that Defendant Collins was not personally involved in the deprivation of Hamilton's rights and cannot be liable based on supervisory liability.

(2006) (Stevens, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."). Here, the alleged sexual assault was not committed by another inmate, or an employee of the VDOC, but by a Certified Nursing Assistant who was an employee of VCU hospital.

The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners" or guards. *Farmer*, 511 U.S. at 833 (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm suffered by an inmate creates constitutional liability for the corrections officers responsible for the inmate's safety. *See id.* at 834. To state a claim for failure to protect, a plaintiff must allege facts that plausibly suggest that he or she was "incarcerated under conditions posing a substantial risk of serious harm," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)), and that the defendant acted with "deliberate indifference" to that danger, *id.* at 837.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant knew of and disregarded a substantial risk of serious harm to his person. *See id.* "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164,

9

168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2). "A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the 'substantial risk of [sexual assault] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). Beyond such actual knowledge, the prison official "must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis omitted) (quoting *Parrish*, 372 F.3d at 303).

### ii. *Defendant Collins Was Not Personally Involved in the Deprivation*

Here, the alleged sexual assault was not committed by another inmate, but by an employee of VCU hospital. Hamilton fails to allege any facts that would suggest that Defendant Collins acted personally in the deprivation of Hamilton's Eighth Amendment rights. Rather, Hamilton attempts to impose liability on Defendant Collins solely because he is the Assistant Warden of the SCU at VCU and based entirely on *respondeat superior*. Because Hamilton alleges that Defendant Collins should be held liable under a theory of *respondeat superior* simply based on his position,

he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676.[5] Accordingly, Claim One will be DISMISSED WITHOUT PREJUDICE.[6]

---

[5] To the extent that Hamilton contends that Defendant Collins is somehow liable on a theory of supervisory liability, that claim would fail. To allege a claim that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Hamilton fails to allege facts that support any one of these three factors. As a preliminary matter, it is unclear why Hamilton believes Defendant Collins should be liable beyond his failure to ensure compliance with the PREA, which is a nonstarter. Although he never precisely alleges such, the Court assumes that Hamilton believes that Defendant Collins should be liable for Defendant Anderson sleeping during his shift and for the alleged sexual assault. However, Hamilton fails to allege facts that would suggest that Defendant Collins had any actual or constructive knowledge that Defendant Anderson was sleeping and not properly conducting his rounds and that this conduct posed a pervasive and unreasonable risk of injury to inmates. Hamilton also fails to allege that Defendant Collins had any actual or constructive knowledge that the VCU employee was engaging in sexual conduct during that time. Additionally, Hamilton does not suggest that anyone else had reported that this VCU employee had engaged in pervasive sexual abuse. *See Wilkins v. Upton*, 639 F. App'x 941, 943 (4th Cir. 2015). Accordingly, Hamilton has failed to state a claim for supervisory liability.

[6] Even generously construing Hamilton to argue that Defendant Collins is liable based on a policy or custom of inaction, Hamilton again fails to state a claim. As explained before, failing to ensure that the SCU was compliant with the PREA is not a cognizable claim. To the extent that Hamilton intends to argue that Defendant Collins had a policy of maintaining dangerous conditions of confinement, Hamilton must allege facts showing that Defendant Collins deprived him of a constitutional right "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). "[A] policy or custom that is not itself unconstitutional . . . must be independently [alleged] to have caused the violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387–88 (4th Cir. 1987). Therefore, mere allegations "that such a policy or custom was 'likely' to cause a particular violation is not sufficient;" rather "there must be [alleged] at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Id.* at 1388 (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985)). Therefore, "liability will attach only for those policies or customs having a 'specific deficiency or deficiencies . . . such

11

### III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss, (ECF No. 19), will be GRANTED. Claim One will be DISMISSED WITHOUT PREJUDICE. Claims Two and Three will be DISMISSED for failure to state a claim for relief and as legally frivolous.

An appropriate Order will accompany this Memorandum Opinion.

/s/
John A. Gibney, Jr.
Senior United States District Judge

Date: 11 January 2022
Richmond, Virginia

---

as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Carter*, 164 F.3d at 218 (emphasis and omission in original) (quoting *Spell*, 824 F.2d at 1390). Hamilton fails to allege facts that would plausibly suggest that through some policy or custom of inaction by Defendant Collins, this alleged sexual assault was almost certainly bound to happen. Thus, Hamilton fails to state a claim for relief on this ground.

12