IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FOREVER Al-MANI HAMILTON
a/k/a JAMAL KEMO SAUNDERS,
    Plaintiff,

v.                                                                               Civil Action No. 3:20cv504

COLLINS, et al.,
    Defendants.

## MEMORANDUM OPINION

Forever Al-Mani Hamilton, a former Virginia inmate proceeding *pro se* and *in forma pauperis* filed this 42 U.S.C. § 1983 action. The matter is before the Court on the Motion to Dismiss filed by the sole remaining defendant, Andrews. (ECF No. 55.) Hamilton has filed a Response. (ECF Nos. 60, 61.) Because Hamilton fails to state a claim upon which relief may be granted, the Motion to Dismiss will be GRANTED.

## I. PROCEDURAL HISTORY

This action has a lengthy procedural history due to service issues and an incorrectly named defendant. At this point, Hamilton has had several opportunities to fine tune his complaint and allegations. In his initial Complaint, (ECF No. 1), Hamilton argued that Defendant Collins, the Assistant Warden of the Security Care Unit ("SCU") at Virginia Commonwealth University ("VCU") hospital, Defendant Anderson, a Correctional Officer at the SCU at VCU, and Defendant Clarke, the Director of the Virginia Department of Corrections ("VDOC"), violated Hamilton's rights under the Prison Rape Elimination Act, 42 U.S.C. §§ 15601–15609 (2021) ("PREA"), and under the Eighth Amendment by failing to comply with the PREA. (*Id.*) In April 2021, Defendants Clarke and Collins moved to dismiss. (ECF No. 19.) By Memorandum Opinion and Order entered on January 11, 2022, the Court dismissed any claim against Defendant Clarke, dismissed

Hamilton's PREA claims with prejudice, and dismissed Hamilton's Eighth Amendment claim against Defendant Collins. (ECF No. 34, at 5–12.) At that juncture, only the claims against Defendant Anderson remained, and Hamilton had not yet served him. (*See id.* at 3 n.1.)

On January 12, 2022, counsel for the defendants provided the last known address for Defendant Anderson under seal, (ECF No. 36), and on February 17, 2022, counsel noted an appearance on his behalf, (ECF No. 41). On March 7, 2022, Hamilton filed a Motion for Leave to File a Supplemental Complaint, (ECF No. 43), with an Amended Complaint attached, (ECF No. 43-1). The Amended Complaint pared the claims down to just those against Defendant Anderson. On March 15, 2022, Defendant Anderson filed a Motion for Summary Judgment. (ECF No. 45.) By Memorandum Order entered on April 7, 2022, the Court granted the Motion for Leave to File a Supplemental Complaint and directed the Clerk to file the Amended Complaint. (ECF No. 48, at 1.) The Court also denied the Motion for Summary Judgment because it was filed after Hamilton submitted his Amended Complaint. (*Id.*) The Court directed Defendant Anderson to respond to the Amended Complaint. (*Id.*)

On April 12, 2022, the Court received Hamilton's response to the Motion for Summary Judgment. (ECF No. 50.) Because the Motion for Summary Judgment indicated that Officer Anderson was not working on the night of the alleged offense, Hamilton sought leave to amend to substitute the named defendant from Defendant Anderson to Defendant Andrews, (ECF No. 50-1), and attached his new Amended Complaint, ("Second Amended Complaint," ECF No. 50-1, at 7–20). By Memorandum Order entered on April 22, 2022, the Court granted Hamilton's request to amend to the extent that the Second Amended Complaint was filed, (ECF No. 52), and supplanted all earlier versions of the complaint, (ECF No. 51, at 1). The Court terminated Defendant Anderson as a party and directed service of the Second Amended Complaint on

2

Defendant Andrews. (*Id.* at 1–2.) On June 21, 2022, Defendant Andrews filed a Motion to Dismiss, (ECF No. 55), and Hamilton has responded, (ECF Nos. 60, 61).

## II. STANDARD FOR A MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). But a plaintiff cannot satisfy this standard with a complaint containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). Thus, for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of h[is] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. HAMILTON'S ALLEGATIONS AND CLAIMS

In his Second Amended Complaint, Hamilton argues that Defendant Andrews, a Correctional Officer in the SCU at VCU violated Hamilton's Eighth Amendment and Fourteenth Amendment rights. Hamilton states as follows:[1]

1. On or about the second weekend of February of 2020, while in the custody and care of Defendant Andrews, a senior Correctional Officer with the [VDOC], Mr. Hamilton was subjected to sexual assault due to Defendant Andrews['s] own individual actions during the time Mr. Hamilton was in his care and custody.
2. Mr. Hamilton was subjected to the unwanton sexual assault by a citizen in society for over (4) hours while being temporarily mentally incapacitated in an intensive care unit at [VCU] Medical Center, where he was receiving medical care for oral ingestion of razor blades.
3. Due to Mr. Hamilton's suicidal ideations, he was assigned a Certified Nursing Assistant (a/k/a "sitter") employed by the hospital to sit beside him inside his hospital room.
4. At all relevant times during the unwanton infliction of sexual assault, Defendant was assigned by his superior, the post assignment as the Officer of the Security Care Unit, single hallway floor.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the record. The Court corrects the capitalization, spelling, and punctuation in the quotations from the Complaint.

4

5. Defendant's official duties, in part, were to provide security to that floor, ensure inmates are not a threat to themselves or the public, ensure the inmate is safe and at no risk posed by the public, and to physically make security checks ("rounds") on that floor every (30) minutes for the reasons stated above.
6. Defendant Andrews was the sole officer on duty at all relevant times discussed herein.
7. However, Defendant Andrews failed in those duties by neglecting and disregarding the safety of Mr. Hamilton and the security operations he was officially charged to labor by electing to sleep at his security post for extensive periods of time, which caused him to miss his security checks, which were part of his duties.
8. Defendant['s] security desk was a mere 7–10 feet from Mr. Hamilton's hospital room and was clearly visible from both Mr. Hamilton's point-of-view in his hospital bed, and the point-of-view of Mr. Hamilton's perpetrator, who was assaulting him.
9. Mr. Hamilton's perpetrator appeared to take advantage of and manipulate Defendant['s] personal actions to choose to sleep instead of attending to his official duties, such as making timely security checks.
10. As a direct result of Defendant Andrews's personal, individual actions, as set out in the previous paragraphs, Mr. Hamilton's constitutional rights were deprived due to the unnecessary and unwanton infliction of being sexually assaulted while in the lawful custody and care of Defendant Andrews.
11. During Defendant's lunch break, when relieved of his duties for an hour, Mr. Hamilton was not subjected to the sexual assault because the officer who provided relief for Defendant fulfilled her duties by making timely security checks to ensure Mr. Hamilton – and all other inmates – were safe.
12. Upon Defendant [Andrews's] return from his lunch break, he elected to return to his individual decision to sleep, not making his timely security checks. As a result of Defendant continuing to neglect and disregard his duties and Mr. Hamilton's safety, the unnecessary and unwanton infliction of the sexual assault continued until approximately 4 a.m.
13. Mr. Hamilton eventually reported the assault and Defendant [Andrews's] actions weeks after, and as a result of the investigation into Defendant [Andrews's] misconduct, and as confirmed by security video footage, Defendant [Andrews] resigned from the Department of Correction[s].
14. Mr. Hamilton has received recent communications from his perpetrator and has actual proof of these communications of the perpetrator admitting to the sexual assault committed against Mr. Hamilton while Defendant [Andrews] failed to perform his duties.
15. Mr. Hamilton has received and continues to receive mental health counseling, and is prescribed medications, each as a result of the injuries he sustained from the sexual assault, and which comprise treatment expected to last for years to come.

(ECF No. 52, at 12–14.) Hamilton has not identified specific legal claims. He appears to contend, however, that Defendant Andrews's alleged conduct violated the Eighth Amendment's prohibition on cruel and unusual punishment and Hamilton's Fourteenth Amendment right to equal protection. The Court generously construes Hamilton to raise the following remaining claims for relief against Defendant Andrews:

> Claim One:   Defendant Andrews denied Hamilton equal protection of the law under the Fourteenth Amendment. (*Id.* at 3.)
>
> Claim Two:   Defendant Andrews was deliberately indifferent because he "had a mandatory duty . . . to protect Mr. Hamilton," and he was "negligent in those duties because was asleep while on duty during the hours [Hamilton] was unprotected and being sexually assaulted." (*Id.* at 3, 4.)

Hamilton requests monetary damages. (*Id.* at 5.)

## IV. ANALYSIS

### *A. Fourteenth Amendment Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Hamilton must allege facts that indicate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Hamilton's allegations are hard to fit into an equal protection analysis. Hamilton fails to identify a similarly situated individual who was treated differently from him or allege that he received differential treatment as the result of purposeful or intentional discrimination. According to Hamilton, Defendant Andrews was asleep and failed to make rounds. Therefore, all inmates in the correctional wing were subject to the same treatment. Simply put, Hamilton fails to allege

6

facts which support either element of an equal protection claim against Defendant Andrews. Accordingly, Claim One will be DISMISSED WITH PREJUDICE for failure to state a claim.[2]

### B. Eighth Amendment Claim

#### 1. Legal Standards

It is well-established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). Sexual abuse is repugnant to contemporary standards of decency, and there is little doubt that allegations of sexual abuse can amount to an Eighth Amendment violation. *See Woodford v. Ngo*, 548 U.S. 81, 118, (2006) (Stevens, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."). Here, the alleged sexual assault was not committed by another inmate, or an employee of the VDOC, but by a Certified Nursing Assistant ("CNA") who was an employee of VCU hospital.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners" or guards. *Farmer*, 511 U.S. at 833 (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). But not every harm suffered by an inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *See id.* at 834. To state a claim for failure to protect, a plaintiff must allege facts that plausibly suggest that he or she was "incarcerated under conditions posing a substantial risk

---

[2] In his Response to the Motion to Dismiss, Hamilton concedes that he has not alleged sufficient facts to make out an equal protection claim and that the claim should be dismissed. (ECF No. 61, at 6–7.)

7

of serious harm," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)), and that the defendant acted with "deliberate indifference" to that danger, *id.* at 837.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *Id.* "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

> A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the "substantial risk of [sexual assault] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it."

*Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (some internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842). Beyond such actual knowledge, the prison official "must also

8

have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis omitted) (quoting *Parrish*, 372 F.3d at 303).

Hamilton fails to satisfy either prong of the Eighth Amendment analysis.

### 2. *No Substantial Risk of Harm*

A risk of assault may be sufficiently substantial as to require action by prison officials where it is "highly probable" that a particular attack will occur, or in instances where a particular individual "pose[s] a 'heightened risk of assault to the plaintiff.'" *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see, e.g., Purvis v. Johnson*, 78 F. App'x 377, 379 (5th Cir. 2003). Negligence or inadvertence does not suffice; rather, "[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a strong likelihood rather than a mere possibility that violence will occur." *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (citation omitted) (alteration in original) (internal quotation marks omitted). That is simply not the case here.

First, Hamilton does not allege facts that plausibly suggest that he was detained in "conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citing *Helling*, 509 U.S. at 35). Hamilton was temporarily housed in the secure correctional wing of the hospital presumably with limited access. Nothing in Hamilton's allegations suggest that the conditions of his confinement posed a substantial risk that he would be sexually assaulted by a hospital employee. Hamilton contends that he was subjected to sexual assault simply because Defendant Andrews was asleep and failed to make his rounds. Based on these facts, it was not *highly probable* that Hamilton would be sexually assaulted by the CNA. Indeed, there is no indication that the particular CNA posed a heightened risk to him. *Brown*, 398 F.3d at 911. Hamilton fails to allege

facts indicating that Defendant Andrews's actions resulted in even a "mere possibility" much less a "strong likelihood[,] . . . that [the sexual assault] would occur." *Pinkston*, 440 F.3d at 889 (citation omitted) (internal quotation marks omitted). Thus, the risk of harm alleged by Hamilton does not rise to the substantial risk of harm required under the Eighth Amendment. For this reason alone, Hamilton's claim must fail.

### 3. *No Deliberate Indifference*

Second, Hamilton fails to allege facts suggesting that Defendant Andrews knew of, and disregarded, a substantial risk of harm to Hamilton by periodically sleeping during his shift. Clearly, it was inappropriate for Defendant Andrews to sleep during his shift and thus neglect his duty to make rounds. But Hamilton's claim sounds in negligence not deliberate indifference.[3] From the facts alleged by Hamilton, the Court cannot form an inference that Defendant Andrews "subjectively recognized a substantial risk of harm" to Hamilton and "subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2). Hamilton does not allege that the CNA who sexually assaulted him had a history of engaging in inappropriate behavior with patients, much less that Defendant

---

[3] In the Second Amended Complaint, Hamilton's brief statement of his claim reflects a tort claim for negligence. Hamilton contends that Defendant Anderson had a "duty . . . to protect Mr. Hamilton" and that Defendant Anderson "was negligent in those duties because he was asleep while on duty during the hours [Hamilton] was unprotected and being sexually assaulted." (ECF No. 52, at 4.) Despite Hamilton's contention, "individuals do not have a constitutional right (1) to be free from a government employee's negligence, even if it causes an injury, or (2) to have the government protect them from such an injury." *Ball v. City of Bristol, Va., Jail*, No. 7:10cv303, 2010 WL 2754320, at *1 (W.D. Va. July 12, 2010) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). Hamilton's allegations that Defendant Andrews was sleeping during his shift and that during that time Hamilton was sexually assaulted, amount to no more than an ordinary lack of care for Hamilton's safety. Although Hamilton does not specially raise a claim of negligence, to the extent that he did, that claim would be subject to dismissal without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining that when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice).

Andrews was aware of this history. *See Makdessi*, 789 F.3d at 133. Hamilton therefore fails to plausibly suggest that Defendant Andrews had subjective actual knowledge that this assault could occur.

Additionally, from Hamilton's allegations it does not appear that Defendant Andrews learned that Hamilton was being sexually assaulted during the event. Hamilton contends that he was sexually assaulted periodically during a four-hour period. Hamilton alleges that his room was less than ten feet from the guard desk, and if Defendant Andrews had not been sleeping, he could have seen Hamilton's room. Hamilton does not allege that he yelled out for help or attempted to get the attention of Defendant Andrews during this four-hour-period while he was being sexually assaulted. Hamilton also claims he was not assaulted when the female officer made her rounds. The Court fails to discern, and Hamilton fails to explain, why he did not notify either Defendant Andrews or the second female officer about the sexual assault either when it started or during or after each occurrence. Hamilton has failed to allege facts that would plausibly suggests that Defendant Andrews knew of, and disregarded, a substantial risk of harm to Hamilton. Thus, Hamilton fails to satisfy either prong of an Eighth Amendment claim. Accordingly, Claim Two will be DISMISSED WITH PREJUDICE for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss, (ECF No. 55), will be GRANTED. Hamilton's claims and the action will be DISMISSED WITH PREJUDICE for failure to state a claim. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

Date: 3 November ~~October~~ 2022
Richmond, Virginia

[signature]